[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11572

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

STEVEN WESLEY GRANDISON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:10-cr-00071-KD-C-1

_____

_____

No. 22-13653

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

STEVEN WESLEY GRANDISON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:07-cr-00037-KD-B-1

_____

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Steven Grandison challenges his concurrent sentences of 36 months' imprisonment following the revocation of his supervised release in two cases (Case No.

22-11572                Opinion of the Court                3

1:07-cr-00037 and Case No. 1:10-cr-00071).[1] He argues that the above-guidelines sentence is substantively unreasonable because the district court failed to consider the 18 U.S.C. § 3553(a) sentencing factors and focused exclusively on Grandison's recidivism risk. After review, we affirm.

---

[1] The government argues that we should dismiss Grandison's appeal with respect to the judgment in Case No. 1:07-cr-00037 because Grandison failed to timely file a notice of appeal in that case, and the notice of appeal that he filed in Case No. 1:10-cr-00071 does not evince a clear intent to also appeal the judgment in Case No. 1:07-cr-00037. We disagree. Even though the district court entered a separate judgment in both cases, we cannot ignore that it addressed both cases in a single revocation hearing and made no distinction between the cases, except to say that the sentences in each case were to run concurrently. And the identical judgments in both cases were entered on the same day. Although Grandison's notice of appeal only listed Case No. 1:10-cr-00071, it also stated that he was appealing "from the Judgment entered revoking the Defendant's [s]upervised release on April 26, 2022." When viewed as a whole and in light of the totality of the circumstances, there is no genuine doubt as to the judgments being appealed, and dismissal is not warranted. *See Becker v. Montgomery*, 532 U.S. 757, 767 (2001) ("Imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court."); *United States v. Grant*, 256 F.3d 1146, 1151 (11th Cir. 2001) (holding under nearly identical circumstances that a notice to appeal that referenced only one case number evinced an intent to appeal in both cases because it referenced the single judgment entered following a consolidated hearing); *see also Hill v. Bellsouth Telecomms., Inc.*, 364 F.3d 1308, 1313 (11th Cir. 2004) (explaining that we "embrace[] 'a policy of liberal construction of notices of appeal' when (1) unnoticed claims or issues are inextricably intertwined with noticed ones and (2) the adverse party is not prejudiced" (quotation omitted)).

## I.        Background

In 2007, Grandison pleaded guilty to bank fraud in the Southern District of Alabama, and the district court sentenced him to 30 months' imprisonment, to be followed by five years of supervised release.  His supervision commenced in April 2009.  In January 2010, the district court revoked his supervised release upon finding that Grandison violated its terms by (1) failing to follow his probation officer's instructions not to engage in the purchase and resale of automobiles, (2) committing a new crime (bank fraud), (3) failing to attend drug treatment and counseling, and (4) failing to make required restitution payments.  The district court sentenced him to 24 months' imprisonment to be followed by 36 months' supervised release.

In a separate proceeding later in 2010, Grandison pleaded guilty to a new count of bank fraud and was sentenced to 33 months' imprisonment to be followed by five years' supervised release, which was set to run consecutively to the revocation sentence in his 2007 case.

Thereafter, in 2015, in both cases, Grandison admitted to, among other violations, committing a new criminal offense in violation of the terms of his supervised release, and the district court revoked his supervised release.  He was sentenced to concurrent terms of 24 months' imprisonment to be followed by 36 months' supervised release in both cases.

Grandison's supervised release term commenced in March 2017.  In November 2018, Grandison's probation officer petitioned

the court for revocation of Grandison's supervised release, asserting that Grandison violated the conditions of his supervised release, which required him to (1) provide the probation officer with access to requested financial information, (2) not open any new lines of credit, (3) make timely restitution payments, and (4) not commit another crime. In 2022, Grandison's probation officer amended the petition, alleging that Grandison also violated the conditions of his supervised release which prohibited him from leaving the judicial district without the permission of the court or his probation officer and required him to notify the probation officer of changes in his residence within a specified period of time.[2] Grandison denied the violations.

At the revocation hearing, Grandison's probation officer testified that, in 2018, she discovered that Grandison had opened two new lines of credit and purchased two vehicles without prior approval. At that time, he was behind significantly on his monthly restitution payments. Upon questioning by the probation officer, Grandison admitted to purchasing the vehicles, but he stated that "he was tricked into signing the loan papers." When the probation officer visited Grandison's home, she observed a brand new 55-inch television still in the box, and Grandison said his girlfriend had purchased it, but at that time she was unemployed. The probation officer also observed paperwork for a third vehicle, which

---

[2] Grandison absconded from supervision in 2018, and he remained at large for three years.

Grandison stated was his daughter's and that he "helped [her] with a car loan."

The probation officer instructed Grandison to report to her office and bring various financial records. He brought some, but not all, of the requested information, and he did the same thing again at a follow-up meeting a few days later. Grandison failed to show up for a reporting appointment in mid-November 2018, and he stopped responding to the officer's calls.

Meanwhile, the probation officer received phone calls from various individuals who stated that they had purchased vehicles from Grandison, but they did not receive the vehicles. Grandison's employer also reported that Grandison was "scamming individuals who he worked with out of money." And a check company reported that Grandison was cashing personal checks with insufficient funds.

Additional evidence presented at the hearing established that, in 2018, a woman gave money to Grandison as payment for a car that he was supposed to procure for her at an auction, but she did not receive the vehicle as promised and Grandison stopped responding to her inquiries. Similarly, another individual sent Grandison money for the purchase of a vehicle, and Grandison gave him a vehicle for the weekend, but then took it back to have body work done on it. Grandison never picked up the car from the repair shop or paid the repair bill and the car was repossessed by a finance company. The body shop received multiple calls from multiple individuals who appeared to believe the car belonged to

them asking about the status of the vehicle. Furthermore, an elderly couple in Florida gave Grandison money for him to procure a tractor for them, but they never received the tractor.

Moreover, in 2019, Grandison purchased two trucks and received a loaner vehicle from a dealership in Georgia, but the checks he used to purchase the vehicles bounced. When contacted about the checks, Grandison stated he would return the vehicles, but he did not do so—instead, the cars were later found in various locations after Grandison "sold" the cars to other individuals.

Finally, in April 2021, Grandison was pulled over in Georgia. Grandison told the officer that his name was "Steven Watson," and denied having a driver's license. The officer was unable to verify Grandison's identify with the name and birthdate he provided, and the officer arrested Grandison for driving without a license. Later, officers determined Grandison's correct identity and discovered that he had multiple outstanding warrants.

Based on the evidence presented during the revocation hearing, the district court found by a preponderance of the evidence that Grandison violated the terms of his supervised release by incurring new debt without prior approval, failing to pay restitution, committing new criminal conduct, and traveling outside the Southern District of Alabama without permission.[3]

---

[3] The district court found Grandison not guilty of violating the condition that required him to notify his probation officer of changes in his residency within a specified period of time.

Grandison's probation officer recommended the district court impose concurrent terms of the statutory maximum term of 36 months' imprisonment with no supervision to follow.[4] In support of the requested sentence, the government emphasized Grandison's criminal history, pattern of fraud, and prior revocations based on similar conduct. Grandison's counsel requested that the district court "consider a sentence within the guidelines."

The district court sentenced Grandison to concurrent terms of 36 months' imprisonment with no supervised release. The district court noted that it had considered the guidelines, but found a guideline sentence inappropriate. The district court reasoned as follows:

> Well, Mr. Grandison, I've been doing this a long time, and I have never ever encountered anybody that committed as much fraud as you did over your lifetime. Your priors include at least four or five, six fraud cases, theft of property, at least four of those, lots of worthless checks, false statements.
>
> And this case involves I don't know how many people you swindled or made false statements to. And I wrote a note to myself before that you are highly

---

[4] Grandison's advisory guidelines range was 21 to 27 months' imprisonment. He faced a statutory maximum of 36 months' imprisonment and 12 months' supervised release.

> likely of recidivism, but, because you pled guilty, I gave you guideline sentences each time.
>
> This time, I'm giving you the maximum of 36 months with no supervised release to follow. I feel that you are a danger to the community, and I don't know what's ever going to stop you or if you ever will.

Grandison objected, arguing that "the sentence is substantively and figuratively unreasonable" and asked the district court to consider a guideline sentence. The district court overruled the objection without explanation. This appeal followed.

## II.    Discussion

Grandison argues that the 36-month revocation sentence in each of his respective cases is substantively unreasonable because the district court failed to consider the § 3553(a) factors and relied exclusively on his potential for recidivism.[5]

We review the "district's court's revocation of supervised release for an abuse of discretion." *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010). We will "vacate the sentence if, but only if, we 'are left with the definite and firm conviction that

---

[5] The government argues that we should review Grandison's claim for plain error because he failed to argue below that the district court did not consider the § 3553(a) factors or that it erroneously relied solely on Grandison's risk of recidivism, and his general challenge to the substantive reasonableness of the sentence was insufficient to preserve those issues. We need not decide whether plain error review applies because Grandison's claim fails even under the lesser abuse of discretion standard.

the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)). The party who challenges the sentence bears the burden of showing that the sentence is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court may, after considering certain factors in § 3553(a), revoke a defendant's supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). The factors the court must consider in sentencing a defendant after a revocation of supervised release include: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to deter criminal conduct, protect the public from the defendant's further crimes, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (3) the sentencing guidelines range; (4) any pertinent policy statement; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3583(e) (cross-referencing § 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7)). The weight given to any § 3553(a) factor "is a matter committed to the discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008).

"If, after correctly calculating the guidelines range, a district court decides that a sentence outside that range is appropriate, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Tome*, 611 F.3d at 1378 (quotations omitted). "[T]he district court [is] free to consider any information relevant to a defendant's background, character, and conduct in imposing an upward variance." *Id.* at 1379 (quotation omitted). Although "[s]entences outside the guidelines are not presumed to be unreasonable, . . . we may take the extent of any variance into our calculus." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). "However, we must give due deference to the district court's decision that the § 3553(a) factors, [as] a whole, justify the extent of the variance." *Tome*, 611 F.3d at 1378.

Here, Grandison failed to show that the district court abused its discretion. Although the district court did not mention expressly the relevant § 3553(a) factors, the district court's explanation when imposing the upward variance sentence establishes that it considered multiple § 3553(a) factors, including the applicable guidelines and sentences available, the nature and circumstances of the offense, Grandison's history and characteristics, and the need for the sentence to deter criminal conduct and to protect the public from Grandison's further crimes. *See* 18 U.S.C. §§ 3553(a), 3583(e). And the district court supported the upward variance with significant justifications, including Grandison's prior criminal history and prior revocations for similar conduct.

To the extent Grandison quarrels with the weight and focus that the district court placed on his criminal history and recidivism, the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. *Williams*, 526 F.3d at 1322; *see also United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (explaining that the district court "is permitted to attach great weight to one factor over others" (quotations omitted)). Given the broad sentencing discretion that district courts have and the totality of the circumstances in this case, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment" in imposing an upward variance sentence of 36 months' imprisonment. *Irey*, 612 F.3d at 1190. Accordingly, we affirm.

**AFFIRMED.**